Before we start, I would like to welcome Justice Breyer back to the First Circuit, where he served as both a judge and as our Chief Judge. We are honored to have you with us today. Thank you. It's very, very nice to be here, and I appreciate the invitation to sit here. Well, welcome back. Thank you, Judge. Today's cases will be called as previously announced. The times will be as allotted to counsel. The first case today is No. 24-1355, Brock T. Waltermeyer v. Robert Hazlewood, et al. At this time, would counsel for the appellant please come to the podium and introduce himself on the record to begin? Good morning, Your Honor. May it please the Court? My name is Samuel Weiss, and I represent Robert T. Waltermeyer. Could you speak up a bit? Please raise the mic. Yes. Is this better?  Fantastic. Thank you. I'd like to reserve two minutes for rebuttal. You may. Mr. Waltermeyer brought a relatively classic deliberate indifference claim under his cell v. Gamble. He alleged that he had debilitating knee pain that was so painful he couldn't sleep. He couldn't walk very far without them swelling up. And that he received at times no treatment or at other times inadequate treatment while he was incarcerated in NCI Berlin. The defendant moved to dismiss his claim on a single ground, which is that he lacked a bivens remedy to bring his claim. And the district court agreed, holding that the administrative remedy process precluded him being able to bring a bivens claim. Let me ask you this question. How big is the aperture of the lens when we are examining a claim like this one and trying to decide whether it's meaningfully different and thus presents a new context from Carlson? How are we to look at, specifically here, the facts of this case? Right. So I think it's certainly a lot narrower than it used to be. Where the Supreme Court has left that is narrower than it used to be but still exists. And so Ziegler v. Abbasi is the last real explication we get of Step 1. Because Egbert v. Boole was a pure Step 2 case. The defendants, the plaintiffs, and the lower court all agreed that it wasn't the context. So the last real exploration we have of whether a context is new or not is in Ziegler v. Abbasi, where they list a series of factors. So if I were looking just at the facts here, so on the one hand I could say, well, both this case and Carlson allege inadequate medical care under the Eighth Amendment, so they are the same. But if I dig a little deeper just into the facts here, I think you could fairly say, well, there's no life-threatening condition here like there was in Carlson. The claim here has to do more with chronic care. And so perhaps it's different and we should see it in a different context. Right. So I agree that there could be an acute versus chronic distinction. Defendants didn't make that distinction below and they didn't make that distinction to this court either. Can we focus on the distinctions that they have made, that in Carlson there were allegations that the defendant prison officials ignored medical advice, that although he was in extreme pain, they got him no doctors, that in the end he died because of the lack of adequate care. And so there was a claim stated for deliberate indifference. Here you allege, and it seems to be uncontroverted, but tell me if it is controverted, he had knee pain. He said, I think I need knee replacement. They took an MRI, which was something he wanted done. The MRI was reviewed by a specialist and the specialist said, someday knee replacements will be in order. But he is under age 50 and it's medically contraindicated. And your complaint, the first filing, says, well, the prisoner disagrees with that. And he thinks that the pain was such that that outweighs the medical judgment. And that is the beginning of the deliberate indifference claim. So take it from there, given that the government says, look, everything we did here was following the medical advice. Later he wants cortisone shots. They give him cortisone shots, but it's every six months. And he wants it every month. Right. So I think there are a couple of things here. So first of all, Estelle v. Gamble, the stated deliberate indifference claim, that's a high bar. Defendants didn't make a merits argument below and they didn't make a merits argument at this point. No, no. This goes to whether this is identical to Carlson, right? That's one of the two considerations we have here. Right. So the question, of course, no case will be identical to Carlson. Oh, on the contrary. I hope no case will be ever equivalent to Carlson. But, you know, there are some bad prison officials out there who ignore pain in inmates. And we could see another case like Carlson. Well, what Ziegler v. Vassi said is it's not whether there's any difference, it's whether there's a meaningful difference. And the meaningful difference is meaningful as to the separation of powers concerns that animate. Did Ziegler say that? It did. So the question isn't whether it's a trivial difference, it's whether it's a meaningful difference. And they list a series of factors. If you go through the Ziegler factors, we are on all fours with Carlson across the board. I think that complaint, your characterization of the complaint, I think is not even close to giving Mr. Waltermeier the inferences that he's due. What he alleges is, and it's kind of a Frankenstein complaint, right, because it's a few different pieces coming together. He alleges that outside providers told him that he needed knee surgery several times. And that later the doctor told him that an outside provider had told him, had told the provider that that would be delayed. But there are several different places in the record. So page five on docket one, you look at docket number 13-1. Again, the complaint is kind of Frankenstein together. But the idea that defendants are merely following medical advice is not supported by the complaint. What recommendations specifically are you referring to and where in the record can we find those? He alleges at page five on docket one that an outside provider told him that he needed knee replacement surgery. But do we have the actual doctor recommendations? Is that anywhere in the complaint? It is. I think it's attached to, I can pull the record site. Although I will also say, and I think there are several points, I'm coming up near the end of my time, there are several points where we're getting really divorced from the Rule 12 standard from the complaint. If I could just use an example, from the letter that defendants wrote to this court on Monday. So defendants wrote a letter and said, I'd like to clarify something. We may have implied that he actually received surgery. He didn't, but only after careful consideration. There was no implication. They stated as a fact in page one and several other times, including in the issue presented, that he did receive surgery. And that is not true. And mistakes happen, of course, and I appreciate the clarification. I don't think we ever thought he received surgery at the time he felt he wanted surgery. Could I ask, you say the records show that some doctor told him he needed knee replacement. Did the doctor say you need it right now, even though you're under age 50? I don't see that in the record. I would just note, this isn't a summary judgment record. And I would say the point to the letter about surgery is that that wasn't in the record either. That was, a lot of these inferences and conclusions are just entirely divorced from his actual allegations in the complaint. I'm sorry, I have another question for you. The Supreme Court has said that they have not overruled Carlson. So for our purposes, Carlson is still good law. But if we are to consider special factors, as Abbasi and Ebert tell us we must, how does any Eighth Amendment claim survive in light of the administrative remedies available? And I ask that, let's just assume your case is exactly on force with Carlson. Right, so I think if you get to step two, we didn't want to waste defendant's time or this court's time by briefing step two. Because I think if you get to step two, if you say this is not a new context, and you get to step two, I think any prison conditions claim fails. So I think what is left of Bivens is cases that are not a new context from Bivens in the search and seizure context. A relatively narrow area there and a relatively narrow area around Carlson claims. And in terms of the special conditions, you argue that that isn't a factor in that first step? I think if the administrative remedy process, despite existing at the time of Carlson, it's existed for the last 40 years, Congress specifically said, wrote a statute that said you need to exhaust the administrative remedy process before bringing a Bivens claim. So it obviously didn't intend to displace a Bivens claim. If that argument is true, what the implication of that would be, was that Ziegler v. Abbasi, which specifically held that Carlson remained good law, that said that if it's the same context as Carlson, claims go forward. Also, sub salentio overruled Carlson. And I think the Supreme Court has admonished federal appeals courts numerous times to not overrule Supreme Court cases. To leave it to the Supreme Court to overrule Supreme Court cases. And I think it also clashes with guidance from the Supreme Court about when to deem Supreme Court cases abrogated. If I may, how do you distinguish the Tenth Circuit decision in Rowland? I do not. I do not. The Tenth Circuit explicitly said, what the Tenth Circuit said is the answer to whether to recognize a Bivens claim is always no. That's what the Tenth Circuit said. And the Eleventh Circuit essentially said the same thing, and Johnson said, made light of it, said this is like the ivory-billed woodpecker. It's extinct. So the Tenth Circuit and the Eleventh Circuit has held that even though the Supreme Court has said that Bivens remedies still exist, they don't. That the same cases that said that Bivens remedies still exist in the, of course, much more limited context. Okay, I've got it. Thank you. Thank you, counsel. At this time, would counsel for the appellees please introduce themselves on the record to begin? Good morning. Janie Lilley for Warden Hazelwood and Dr. Kistler. May it please the Court. The District Court correctly dismissed plaintiff's claim because they arise in a new context from Carlson. As Judge Lynch identified, Carlson, the salient official conduct that the Supreme Court sought to deter for discrete acts of individual malfeasance. Whereas plaintiff's claim implicates institutional decision-making by the Bureau of Prisons in denying his request for knee replacement surgery. That implicates a number of the factors that the Supreme Court has identified in Abbasi and other cases for distinguishing one of the existing contexts. Judge Montecalvo asked the question of how we are supposed to analyze the question of whether this is like or sufficiently like Carlson. Could you address that? Yes, Your Honor. The Supreme Court has been clear that merely stating the same constitutional violation as one of the existing contexts or suing similar defendants is not sufficient, but that the Court needs to look to meaningful, factual differences that implicate some of the new context factors. What is the meaning? What is the difference? The first case, Carlson, he says, you're not treating me properly and I might die, and he did. In this case, he says, you're not giving me proper treatment for my bad knee and it might really hurt me and I need that, and they don't give it to him. Okay? In both cases, the plaintiffs are sick. In both cases, they want the prison to do something, and in both cases, the prison didn't do it, and so they bring a lawsuit. So what's the difference? Your Honor, if it were merely sufficient to state, you know, the same types of defendants and the same constitutional, then we wouldn't have to look to the factors that the Supreme Court set out. Well, which is the factor that's different here that they've listed, that they've listed in the cases that you're arguing? I think the main difference all comes down to the fact that in Carlson, they were seeking to hold individual employees who committed discrete acts of malfeasance liable and damages, and here, plaintiff is seeking to hold an individual doctor responsible for BOP's decision to deny him knee replacement. So you're saying you can't sue the doctor who made a bad recommendation? You say that you can sue the prison officials? We're saying that that sort of claim that challenges BOP's institutional decision-making should be directed at the agency or the United States subject to the statute of limitations. Are any prison officials defendants here? I'm sorry? Are any of the prison officials defendants in this case? The two defendants in this case are the warden of the facility and the BOP doctor. Okay, so the warden sounds like a prison official. Yes. Okay, so what's the difference? You said they're suing a prison official, and in that one, they were suing some prison officials, and here they're suing a doctor. Didn't they sue the doctor in that one, too, or not? Yes, Your Honor. But as the Supreme Court has said, that is not sufficient. I didn't say it was sufficient. I want to know what the difference is. The difference is the nature of the judicial intrusion involved in having to superintend BOP's medical management decision-making about elective surgeries. The nature of the judicial guidance at issue in Carlson, the discrete acts there involved administering of contraindicated medication. Well, I grant you that you may have a much weaker case that you have to defend here than they did in Carlson. I mean, the man died in Carlson, and here there were all these different rules, and maybe their treatment was good. Then they win. You see? Then you win, rather. But that way, you can't just say the difference is between two cases, or can you? The difference between two cases is this is a weaker case, a lot, lot, lot weaker from your point of view than in Carlson. Now, does the weakness of a case make a difference? No, Your Honor. We're not here to argue the merits of the Eighth Amendment. Okay. The weakness makes no difference, so we must assume they're equally strong. Maybe that's concrete a fact, but we must. Okay. We assume they're equally strong cases. Now, what's the difference? Your Honor, the difference is the nature of the judicial intrusion, the specificity of the judicial guidance at issue, in the same way that the specificity of the judicial guidance in Abbasi was distinct from that in Carlson. The type of acts of misconduct alleged are very different here. If this claim were to allow to proceed, the systemic and system-wide consequences of courts analyzing and superintending this type of medical decision-making, not only in Mr. Waltermeier's case. This type is? This type is the type of decision-making about approval of surgery and other procedures and medical care in the context of all of the different protocols and procedures that BOP has. It seemed to me below this was some of the dispute was just factual, right? Is this similar to Carlson in a factual way? And that certainly was the government's position. No, it's not similar factually. On appeal before us, you change what the arguments are to say everything he is complaining of has to do with BOP policy. And if it does, that puts it in a different category from Carlson. But I guess I'm wondering two things. One, is that really a fair characterization of his pro se complaint below? And then secondly, inadequate care claims involving prison officials sort of necessarily will always at least touch on policy issues with how BOP prisons run and administer medical care. So why should this case be different as you say it is? Your Honor, it sounds like there are three different questions, so I'd like to respond to each of those. First, Your Honor, I think that yes, the Supreme Court has instructed courts to look to factual, meaningful factual differences that are meaningful from the perspective of the two-step Abbasi framework in support of a separation of powers analysis. And that's precisely why the factual differences we pointed to present a risk of judicial intrusion that is significant. And that's why it should be different than in Carlson. That implicates the clarity and specificity of pre-existing judicial guidance about what a warden or a doctor is supposed to do in these circumstances and whether or not that person has violated the Eighth Amendment and the nature of the type of action. So yes, we focused on factual differences, but all to the end of explaining why, from a separation of powers perspective, Congress and not the courts should extend an individual damages remedy here. Your second question, I believe, was about whether it's a fair reading of the pro se complaint. And I would direct Your Honor to Supplemental Appendix 2, where the Magistrate's Report and Recommendation describes what it considers the Third Amended Complaint. With many of the documents that plaintiff had detailed, including documents, his motion for joinder referred to BOP program statement about patient care and the way that BOP is making decisions to deny his request for elective knee replacement surgery. So yes, I think it is a fair characterization of his complaint and the arguments he made in his report. But his complaint is, in fact, challenging the way BOP is making decisions about these types of procedures. And I think your third question was about sort of the extent of this argument. I think the Supreme Court has instructed not to look at the extent of the difference, but whether the baseline is to look at Carlson and what the core of the Carlson claim, and the court has said this over and over again, that a Bivens damages remedy is extraordinary. And it is designed to challenge and deter. So in Carlson, couldn't the government have argued that the plaintiff there was challenging BOP's policy about housing for people who are suffering from certain medical conditions and its policy about responding to emergency medical events? It might have, but there the Supreme Court, for the first time, embarked on creating a novel damages remedy for the grievances at issue in Carlson, which were primarily about the administration of contraindicated drugs, the use of equipment that was known to be malfunctioning, administering care that was against doctors' orders, denying him all care in the case of an emergency. That was the core of the Carlson claim, and the Supreme Court has said over and over again, and Malesko and Abbasi, that these extraordinary individual damages actions are designed to deter individual misconduct, not to challenge policymaking. Those types of challenges are appropriately directed against BOP policy against the United States, subject to any guardrails that Congress has set up for that type of redress. I know you're running short on time, so I just want to ask a specific factual question. There's a report in the record by Dr. Kistler, I think it's at ECF number 10, and it's not one of the documents the district court construed as part of the operative complaint. As we're hearing a motion to dismiss, can we consider that report? I'm not sure that I'm familiar with what I'm referring to. I don't know what exactly that report is, but I think it would be appropriate to consider the documents that the magistrate and the district court considered to make what plaintiff has characterized as this sort of Frankenstein, but piecing together different things in the third amended complaint, and that supplemental appendix 2 lists the documents there, and then goes on to describe what the complaint is as the magistrate understood it and considered it. If there are no further questions, we ask that the court affirm the judgment of the district court. Thank you, counsel. At this time, would counsel for the appellant please come up and introduce himself back on the record to begin. He has a two-minute rebuttal. Thank you, your honors. Samuel Weiss again for Brock Waltermeyer. So to the first point, Judge Montecalvo, I think it's, you know, it would even be understating it to say that the Carlson claims would implicate BOP policies. Any medical care claim, by their definition of implicate, would implicate BOP policies in the sense that providing medical care to 150,000 people, and it's the most expensive and most complicated service that they provide. There's a lot of policies about acute care, about chronic care. The issue isn't whether it implicates a policy, it's whether it challenges a policy. What the Supreme Court has held is that Bivens remedies individual damages actions. You can bring an equitable action. There's no question you can go get an injunction. But individual Bivens cases are a bad vehicle to challenge a specific BOP policy. Whether expressly or defendants can even make that argument implicitly. The problem here is they haven't actually identified the specific policy he seeks to challenge. Again, the idea that there's some sort of BOP institutional decision-making process denying him surgery as opposed to one-off misconduct, that's just not coming from his complaint. When given him the inference that he's due. And to answer Judge Lynch's question, the references to, just quickly, where he references getting recommendations from outside providers that he needs surgery. I mentioned page 5 of docket number 1. Same thing with page 22, 13-1, page 2. And then docket number 27. That's actually after he was transferred. I'm getting this now. You have a complaint. The complaint says the problem with the BOP, whether it's the warden or somebody else, is that they have a policy that says no knee replacement surgery until you're over 50 years old. It's written in huge black letters. Now, if I bring a Bivens action to challenge that, you agree I can't. I do agree, yes. But if what I do is I say there is no such policy written down, or the complaint says nothing about it, and all it says is they should have replaced my knee and they didn't, that's okay under Bivens. Yes, absolutely. So that's the issue we have to decide. I think that's exactly right. Okay, very good. If there was such a policy, you could bring it. You say you can't. You can't just attack a policy, but you have to attack they didn't do something, or they did do something. And then whether they have a policy or not will come out in the case. May I, please? I thought the underlying issue was not whether there was a policy against knee surgery, but that the policy was if a doctor recommends no knee surgery, in this instance, because he was too young, did not recommend that he never have it, just that it be deferred until he was after age 50, then what is the answer? You say Bivens does not bar that claim? So there is no such policy. What we have in the record is a fleeting reference to the prison doctor who is not providing surgery telling Mr. Walter Meyer that an outside provider told him that. We also have saying, not as a policy, but just saying, I don't think it's a good idea to do it below 50. And if it turns out that that's true, we don't know that Mr. Walter Meyer has no idea if that's true. But if that turns out that it's true and that it was a good faith decision, then he wouldn't have a Bivens remedy, but he also wouldn't have a claim on the merits either. But we also have a lot of conflicting information in the complaint. Yeah, but here's the problem. The Supreme Court, in the cases narrowing the scope of Bivens and Carlson, has encouraged dismissal at the motion to dismiss stage. That is true in the sense that Bivens is a cause of action, so it's normally an antecedent question. But Mr. Walter Meyer just hasn't pleaded himself out of a Bivens remedy. Okay, thank you.